**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**CONSOLIDATED**

| | | |
|---|---|---|
| TONY LAMONTE GREENE, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | No. 22-1064 |
| v. | ) ) | Filed: April 25, 2023 |
| THE UNITED STATES, | ) ) ) | |
| Defendant. | ) ) | |
| DANIEL CODY WATKINS, | ) ) ) | |
| Plaintiff, | ) ) | No. 22-1185 |
| v. | ) ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs in this consolidated matter are members of the Cherokee Nation who are incarcerated in Oklahoma. They claim that pursuant to rights granted in treaties between the United States and the Cherokee Nation their convictions by the State of Oklahoma were unlawful. Before the Court are the Government's Motion to Dismiss, Plaintiffs' Motion to File a Surreply, and Plaintiffs' Motion for Joinder. For the reasons stated below, the Court **GRANTS** the Government's Motion and **DENIES** Plaintiffs' Motions.

**BACKGROUND**

Each Plaintiff in this consolidated matter alleges to be either a member of the Cherokee Nation or a descendant of freedmen subject to the treaties between the Cherokee Nation and the

United States. Pls.' Compl. at 1, ECF No. 1.[1] Plaintiffs were convicted of state crimes and are currently inmates at the James Crabtree Correctional Center in Helena, Oklahoma. *Id.* at 1–2.

Plaintiffs in the *Greene* case filed their Complaint *pro se* on August 19, 2022, and Plaintiff in the *Watkins* case filed his Complaint *pro se* on August 30, 2022. Plaintiffs allege that they were subjected to Oklahoma criminal law proceedings in violation of treaty provisions between the Cherokee Nation and the United States. *Id.* at 3. They each seek $300,000 plus $100 per day of detention in compensatory damages and $1,000,000 in punitive damages for their alleged wrongful incarceration. *Id.* In their Complaint, Plaintiffs in the *Greene* case also requested class certification and appointment of counsel, which the Court denied. *See id.*; Order at 8, ECF No. 25. Plaintiff Watkins' Complaint likewise requests appointment of counsel, which the Court has not yet addressed. Pl.'s Compl. at 3, *Watkins*, No. 22-1185, ECF No. 1. Because the Complaints filed in each case are substantively identical, the Court consolidated the cases on January 18, 2023. *See* Consolidation Order at 2, ECF No. 35.

On December 15, 2022, the Government filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC").[2] *See* Def.'s Mot. to Dismiss ("MTD"), ECF No. 29. The Government argues that the Court lacks jurisdiction over Plaintiffs' claims because they have not identified a provision in the cited Cherokee treaties that would entitle them to monetary compensation. *Id.* at 7. Plaintiffs respond that certain treaty

---

[1] The Complaints and Responses to the Government's Motion to Dismiss filed by the *Greene* and *Watkins* Plaintiffs are nearly identical. To avoid unnecessary duplicative citations, this opinion refers to the docket entries in the lead case, *Greene v. United States,* No. 22-1064, unless stated otherwise.

[2] Because the Government filed the Motion before the cases were consolidated, the Court entered an order deeming the Government's Motion to Dismiss as applying to Plaintiff Watkins in addition to the *Greene* Plaintiffs. *See* Order at 2, ECF No. 38. Plaintiff Watkins was given an opportunity to file supplemental briefing in response to the Government's Motion. *Id.*

provisions guarantee that members of the Cherokee Nation are not subject to state criminal prosecution, and they demand monetary compensation from the United States for breach of that guarantee. Pls.' Resp. to MTD ¶¶ 5–6, ECF No. 36. The Government filed its Reply in support of its Motion on February 23, 2023, and the Motion to Dismiss is now fully briefed. *See* Reply in Support of MTD, ECF No. 44. Plaintiffs subsequently filed a Motion for Leave to File a Surreply, arguing that Cherokee treaties should be construed liberally in favor of the Indians. Mot. to File Surreply ¶ 2, ECF No. 48.

On March 3, 2023, Plaintiffs also filed a Motion for Joinder seeking to add three other individuals—Kendall Dean Mitchell, Shawn David McMinn, and Billy Joe Wolfe, Jr.—as Plaintiffs. *See* Mot. for Joinder, ECF No. 47. Like Plaintiffs, Mr. Mitchell, Mr. McMinn, and Mr. Wolfe are alleged members of the Cherokee Nation who are incarcerated at the James Crabtree Correctional Center. *Id.* ¶¶ 1–3. The Court previously denied Motions for Joinder filed by Mr. Mitchell and Mr. McMinn without prejudice due to procedural defects. *See* Order Denying Mot. for Joinder, ECF No. 42; Order Denying Mot. for Joinder, ECF No. 45.

## LEGAL STANDARDS

### I. Jurisdiction of the Court of Federal Claims

The United States Court of Federal Claims is a court of limited jurisdiction. *Massie v. United States*, 226 F.3d 1318, 1321 (Fed. Cir. 2000). Derived from the Tucker Act, the Court has jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in

tort." 28 U.S.C. § 1491(a)(1).³ The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976); *see United States v. Navajo Nation* (*Navajo II*), 556 U.S. 287, 290 (2009) (noting the Tucker Act does not create a substantive right but acts simply as a "jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)"). Thus, to establish jurisdiction, a plaintiff must identify a separate source of law that "can fairly be interpreted as mandating compensation by the Federal Government." *Navajo II*, 556 U.S. at 290 (quoting *Testan*, 424 U.S. at 400).

While the Court generally lacks jurisdiction over claims dependent upon a treaty with foreign nations, 28 U.S.C. § 1502, the Court can assert jurisdiction over claims grounded in treaties between the United States and Indian nations, which are treated "as a species of contract." *Tsosie v. United States*, 825 F.2d 393, 401 (Fed. Cir. 1987); *see Washington v. Wash. State Com. Passenger Fishing Vessel Ass'n* (*Wash. C.P.F.V.*), 443 U.S. 658, 675 (1979) ("A treaty, including one between the United States and an Indian tribe, is essentially a contract between two sovereign nations."). Generally, "when a breach of contract claim is brought in the Court of Federal Claims under the Tucker Act, the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required." *Holmes v. United States*, 657 F.3d 1303, 1314 (Fed. Cir. 2011). However, when the contract at issue is not of the type that normally involves purely monetary relief, the presumption does not apply, and the plaintiff must demonstrate that the contract contains provisions that can reasonably be inferred to mandate

---

³ Plaintiffs identify the Little Tucker Act, 28 U.S.C. § 1346, as the jurisdictional statute relevant to their claims. ECF No. 1 at 1. Because Plaintiffs seek greater than $10,000 from the Government, the Tucker Act, 28 U.S.C. § 1491, is the relevant jurisdictional statute. In any event, "[t]he Little Tucker Act follows the same rules as its bigger sibling, the Tucker Act." *Nat'l Veterans Legal Servs. Program v. United States*, 968 F.3d 1340, 1348 (Fed. Cir. 2020).

compensation by the United States. *Id.* at 1315. Treaties with Indian nations fall into those categories of contracts that require the plaintiff to identify money-mandating provisions in the treaty. *See Jarvis v. United States*, No. 22-1006, 2022 WL 1009728, at *2 (Fed. Cir. Apr. 5, 2022) (dismissing claim for violation of Indian treaty where plaintiff failed to identify money-mandating provision in treaty); *Moore v. United States*, 163 Fed. Cl. 591, 595 (2022) (same); *Edwards v. United States*, No. 15-580C, 2015 WL 6560547, at *3 (Fed. Cl. Oct. 29, 2015) (same).

Whether jurisdiction is satisfied depends on a two-part analysis. First, the plaintiff must demonstrate that the treaty "establishes specific fiduciary or other duties, and allege that the Government has failed to faithfully perform those duties." *Hopi Tribe v. United States*, 782 F.3d 662, 667 (Fed. Cir. 2015) (internal quotation marks and brackets omitted) (quoting *Navajo II*, 556 U.S. at 290–91). If he satisfies the first part, the Court must then determine whether the treaty provision(s) at issue can be fairly interpreted as making the Government liable in damages for a breach of the duties imposed. *Id.* As with any alleged source of law, if the Court determines that the treaty is not money-mandating, then dismissal of the cause of action for lack of jurisdiction is appropriate. *Fisher v. United States*, 402 F.3d 1167, 1173 (Fed. Cir. 2005).

## II.  Interpretation of Treaties with Indian Tribes

As with any contract, the Court's role when interpreting a treaty is to ascertain the intent of the drafters. *Wash. C.P.F.V.*, 443 U.S. at 675. Nevertheless, because of the historically superior negotiating position of the United States, treaties between the United States and Indian nations "must [] be construed, not according to the technical meaning of [their] words to learned lawyers, but in the sense in which they would naturally be understood by the Indians." *Id.* at 676. Furthermore, "Indian treaties are to be interpreted liberally in favor of the Indians, and [] any ambiguities are to be resolved in their favor." *Minnesota v. Mille Lacs Band of Chippewa Indians*

(*Mille Lacs*), 526 U.S. 172, 200 (1999) (citations omitted).  Even when faced with ambiguities in an Indian treaty, the Court must "stop short of varying its terms to meet alleged injustices."  *Jones v. United States*, 846 F.3d 1343, 1356 (Fed. Cir. 2017) (quoting *Nw. Bands of Shoshone Indians v. United States*, 324 U.S. 335, 353 (1945)).

### III.     Dismissal Under Rule 12(b)(1)

Before reaching the merits of a plaintiff's action, the Court must as a threshold matter assure itself that subject-matter jurisdiction exists.  RCFC 12(b)(1), (h)(3); *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (affirming that subject-matter jurisdiction "'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception'" (quoting *Mansfield v. Swan*, 111 U.S. 379, 382 (1884))).  The plaintiff bears the burden of establishing by the preponderance of evidence the Court's jurisdiction over its claim.  *See Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014).

Courts should "liberally construe[]" a *pro se* plaintiff's allegations and apply "less stringent standards" to a *pro se* complaint in comparison to "formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  This loosening of the legal strictures on pleadings, however, does not spare *pro se* plaintiffs from the burden of establishing subject-matter jurisdiction.  *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *see also Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987) (noting that courts may not establish different rules for *pro se* litigants with respect to jurisdictional requirements).

When deciding whether to dismiss a complaint pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction, the Court must accept all factual allegations as true and draw all reasonable inferences in the claimant's favor.  *See Henke v. United States*, 60 F.3d 795, 797 (Fed.

Cir. 1995). If a complaint contains challenged factual allegations, for purposes of ruling on a motion to dismiss, the court may inquire into facts necessary to support jurisdiction and may resolve disputed facts. *See Al Johnson Constr. Co. v. United States*, 19 Cl. Ct. 732, 733 (1990); *see also Indium Corp. of Am. v. Semi-Alloys, Inc.*, 781 F.2d 879, 884 (Fed. Cir. 1985) (a court may consider "evidentiary matters outside the pleadings" when assessing a Rule 12(b)(1) dismissal).

## DISCUSSION

### I. Plaintiffs' Complaints Must Be Dismissed for Lack of Jurisdiction.

Plaintiffs allege that under two treaties between the Cherokee Nation and the United States—the Treaty with the Cherokee of 1835 (known as the Treaty of New Echota) and the Treaty with the Cherokee of 1866 (known as the Treaty of Washington)—they are not subject to the criminal jurisdiction of the State of Oklahoma. ECF No. 36 ¶ 6; ECF No. 1 at 3. Plaintiffs argue that because they were wrongfully prosecuted and incarcerated by the state, those treaties entitle them to compensation from the federal government. ECF No. 1 at 3. The Court concludes that the treaty provisions cited in Plaintiffs' Complaints are not money-mandating and thus do not provide a basis for the Court's jurisdiction. Nor can the other treaty provisions identified in response to the Government's Motion save Plaintiffs' claims from dismissal, as the provisions are either not money-mandating or bear no relevance to Plaintiffs' allegations.

### A. The Treaty Provisions Identified in Plaintiffs' Complaints Cannot Support Jurisdiction.

In their Complaints, Plaintiffs identify at least three treaty provisions underlying their claims. The first is Article 26 of the Treaty of Washington. ECF No. 1 at 2. That treaty, in general, guaranteed the Cherokee Nation "title and possession of their lands, and jurisdiction over their country." *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 654 (1890). Article 26 states, in part:

> The United States guarantee to the people of the Cherokee Nation the quiet and peaceable possession of their country and protection against domestic feuds and insurrections and against hostilities of other tribes. They shall also be protected against inter(r)uptions or intrusion from all unauthorized citizens of the United States who may attempt to settle on their lands or reside in their territory.

Treaty with the Cherokee, July 19, 1866, 14 Stat. 799, 1866 WL 18776 (hereinafter Treaty of Washington). Plaintiffs also cite Article 27 of the same treaty, which sets forth in relevant part "the duty of the United States Indian agent for the Cherokees to have such persons, not lawfully residing or sojourning [in the Cherokee Nation], removed from the nation, as they now are, or hereafter may be, required by the Indian intercourse laws of the United States." Treaty of Washington, art. 27; *see* ECF No. 1 at 2. Finally, they identify Article 5 of the Treaty of New Echota. ECF No. 1 at 2–3. Under that treaty, the Cherokee Nation agreed to give up "all of its aboriginal land interests east of the Mississippi River in exchange for substantial territory in the present state of Oklahoma." *Cherokee Nation of Okla. v. United States*, 21 Cl. Ct. 565, 568 (1990). Article 5 states, in relevant part:

> The United States hereby covenant and agree that the lands ceded to the Cherokee nation in the forgoing article shall, in no future time without their consent, be included within the territorial limits or jurisdiction of any State or Territory. But they shall secure to the Cherokee nation the right by their national councils to make and carry into effect all such laws as they may deem necessary for the government and protection of the persons and property within their own country belonging to their people or such persons as have connected themselves with them: provided always that they shall not be inconsistent with the constitution of the United States and such acts of Congress as have been or may be passed regulating trade and intercourse with the Indians.

Treaty with the Cherokee, Dec. 29, 1835, 7 Stat. 478, 1835 WL 3710 (hereinafter Treaty of New Echota).[4]

---

[4] The Complaints also contain a brief reference to Article 2 of the Treaty of Washington as granting Cherokee citizenship to persons formerly enslaved in the Cherokee Nation. ECF No. 1 at 3. However, Article 9 is the section that addresses this citizenship issue. Treaty of Washington, art. 9. In an unpublished opinion, the Federal Circuit found that this treaty provision is not money-

8

None of these provisions provide a basis to invoke the Court's jurisdiction. Even assuming they impose sufficiently "specific fiduciary or other duties" on the United States, *United States v. Navajo Nation* (*Navajo I*), 537 U.S. 488, 506 (2003), Plaintiffs point to no language that would raise the "fair inference" that the Government should be liable for money damages for failure to carry out those duties. *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 475 (2003) (finding language that created specific trust duties could raise inference that duties were money-mandating); *see United States v. Mitchell* (*Mitchell II*), 463 U.S. 206, 227 (1983) (finding duties that required Government to generate proceeds for the tribe were money-mandating). And while the Court must resolve treaty ambiguities in favor of the Indians, *Mille Lacs*, 526 U.S. at 200, Plaintiffs point to no relevant language that would invoke this cannon of construction. The identified treaty provisions, therefore, cannot support jurisdiction in this Court.

Indeed, courts have dismissed for lack of jurisdiction similar wrongful imprisonment claims and other claims based on treaties between the United States and Indian tribes, including the 1866 Treaty of Washington. *See Moore*, 163 Fed. Cl. at 595 (wrongful incarceration claim brought by inmates at the James Crabtree Correctional Center premised on treaties with the Choctaw and Chickasaw Nations); *Edwards*, 2015 WL 6560547, at *3 (wrongful incarceration claim premised, in part, on the Treaty of Washington); *McCoy v. United States*, Nos. 05-120L, 05-167L, 2005 WL 6124815, at *3 (Fed. Cl. June 29, 2005) (claims brought by a prisoner premised, in part, on an alleged 1838 Indian treaty); *Jarvis*, 2022 WL 1009728, at *2 (reparations claim premised on the Treaty of Washington). In such cases, the courts held that no treaty provision applicable to the wrongs alleged provided a right to monetary compensation from the United States. *See, e.g.*, *Jarvis*, 2022 WL 1009728, at *2.

---

mandating. *Jarvis*, 2022 WL 1009728, at *2.

### B. The Other Treaty Provisions that Plaintiffs Identify in Their Responses Cannot Save Plaintiffs' Claims from Dismissal.

In their Responses to the Government's Motion to Dismiss, Plaintiffs also identify two treaty provisions for the first time as supporting jurisdiction—Article 3 of the Treaty of New Echota and Article 13 of the Treaty of Washington.[5] ECF No. 36 ¶¶ 1, 5. No claim under these provisions is properly before the Court, as "[i]t is generally improper for a party to raise new claims not included in its complaint in an opposition to a motion to dismiss." *Driessen v. United States*, 116 Fed. Cl. 33, 44 n.10 (2014). Furthermore, even if Plaintiffs' new claims were properly before the Court, they would not survive a motion to dismiss.

Article 13 of the Treaty of Washington states, in relevant part:

> That the judicial tribunals of the [Cherokee] nation shall be allowed to retain exclusive jurisdiction in all civil and criminal cases arising within their country in which members of the nation, by nativity or adoption, shall be the only parties, or where the cause of action shall arise in the Cherokee Nation, except as otherwise provided in this treaty.

Treaty of Washington, art. 13. Much like Article 5 of the Treaty of Washington, discussed above, this provision recognizes the jurisdiction of the Cherokee Nation but does not impose any specific fiduciary or other duties on the United States, nor does it contain language that contemplates an award of money damages for the breach of any such duties. Accordingly, this provision cannot form the jurisdictional basis for Plaintiffs' claims.

---

[5] Plaintiffs also briefly reference Article 4 of the Treaty of Washington as granting formerly enslaved persons Cherokee citizenship. ECF No. 36 ¶ 6. As explained above, Article 9 is the relevant provision, and that Article cannot support jurisdiction in this case. *See supra* § I.A. Plaintiffs also reference Secretary of the Interior Order 3335, 2014 WL 4433594 (2014). ECF No. 36 ¶ 8. It is unclear for what purpose Plaintiffs reference the Order, but in any event, it is not a money-mandating source of law. The Order expressly states it "is for guidance purposes only and . . . is not intended to, and does not, create any right to administrative or judicial review or any legal right or benefit, substantive or procedural, enforceable by a party against the United States." 2014 WL 4433594, at *5–6.

Plaintiffs also identify Article 3 of the Treaty of New Echota as a source of law entitling them to compensation. ECF No. 36 ¶ 1. Article 3 states, in relevant part:

> The United States shall always have the right to make and establish such post and military roads and forts in any part of the Cherokee country, as they may deem proper for the interest and protection of the same and the free use of as much land, timber, fuel and materials of all kinds for the construction and support of the same as may be necessary; provided that if the private rights of individuals are interfered with, a just compensation therefor shall be made.

Treaty of New Echota, art. 3. Plaintiffs argue that because their "private rights . . . [were] interfered with" they are entitled to "just compensation" from the United States. ECF No. 36 ¶ 1 (quoting Treaty of New Echota, art. 3). Read in context, however, Article 3 provides for compensation only when the United States is exercising its right to "make and establish . . . post[s] and military roads and forts in any part of the Cherokee country, as they may deem proper." Treaty of New Echota, art. 3. The allegations in Plaintiffs' Complaints—involving alleged unlawful prosecution and incarceration by the State of Oklahoma—bear no relation to such exercise of federal authority. Therefore, even if Plaintiffs' newly raised allegations under Article 3 were properly before the Court, they would still fail to state a claim upon which relief may be granted. *See Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1307 (Fed. Cir. 2008) (If a "plaintiff's case does not fit within the scope of [a money-mandating source of law,] . . . plaintiff loses on the merits for failing to state a claim on which relief can be granted." (quoting *Fisher*, 402 F.3d at 1175–76)).

## II.     Plaintiffs Have Not Identified Grounds to File a Surreply.

After completion of briefing on the Government's Motion to Dismiss, Plaintiffs filed a Motion for Leave to File a Surreply. *See* ECF No. 48. A surreply is normally appropriate when a party raises new arguments for the first time in a reply brief, thus depriving the opposing party of the opportunity to respond. *Hardy v. United States*, 153 Fed. Cl. 624, 628 (2021). Plaintiffs identified no new arguments raised by the Government in its Reply and provided no other

11

justification for a surreply; rather, Plaintiffs largely reiterated prior arguments included in their Responses. ECF No. 48 ¶¶ 1–2. The Court therefore **DENIES** Plaintiffs' request to file a surreply.

### III. Amendment of Plaintiffs' Complaints Would Be Futile.

Plaintiffs request that, if the Court finds their Complaints do not identify a money-mandating source of law or fail to state a claim upon which relief may be granted, they be allowed to amend their pleadings to correct any deficiencies. ECF No. 36 at 3. It is within the Court's discretion to allow a party to amend its complaint, and amendments should be liberally granted. *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403 (Fed. Cir. 1989). Nevertheless, "'futility of amendment' may justify the denial of a motion for leave to amend." *Id.* at 1403–04 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Courts should deny a request to amend on futility grounds "if the amended complaint would fail to state a claim upon which relief can be granted, or if the proposed amendment would fail for lack of jurisdiction." *Chapman v. United States*, 130 Fed. Cl. 216, 219 (2017) (internal citations omitted).

In *Edwards*, the court found that no provision of the Treaty of Washington was money mandating or relevant to the plaintiff's claim seeking reimbursement for wrongful imprisonment. 2015 WL 6560547, at \*1, \*3; *see Jarvis*, 2022 WL 1009728, at \*2 (finding no provision in the Treaty of Washington was both money-mandating and relevant to plaintiff's slavery reparations claim). The Court likewise identifies no money-mandating provisions in the Treaty of New Echota that are relevant to Plaintiffs' wrongful imprisonment claims. Plaintiffs already attempted through their Responses to identify additional relevant money-mandating provisions to no avail. Because the treaties identified by Plaintiffs do not provide a legal basis for Plaintiffs' claims, any amendment based on those treaties would either fail for lack of jurisdiction or fail to state a claim. Accordingly, the Court **DENIES** Plaintiffs' request to amend their Complaints.

### IV.  Appointment of Counsel Is Not Justified in this Case.

Plaintiff Watkins requests that the Court appoint him counsel pursuant to *Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981), and 25 U.S.C. § 175. *Watkins*, ECF No. 1 at 3. Plaintiffs in the *Greene* case made the same request premised on the same sources of law, which the Court denied. As the Court explained, because Plaintiffs only seek monetary compensation and are not at risk of further loss to their personal liberties, appointment of counsel is not appropriate in this case. *See* ECF No. 25 at 6. The Court's reasoning applies equally to Plaintiff Watkins' request.

### V.  Plaintiffs' Joinder Request is Moot.

Plaintiffs filed a Motion for Joinder seeking to include as plaintiffs three other individuals who desire to bring the same claims as Plaintiffs. *See* ECF No. 47. As the Court has explained, when a Plaintiff desires to include additional individuals as plaintiffs, the proper method to do so is to seek leave to amend the complaint. ECF No. 42 at 2 (citing *Bell v. United States*, No. 13-455, 2016 WL 3172401, at *2 (Fed. Cl. June 6, 2016)). However, because the Court lacks jurisdiction to entertain the claims in Plaintiffs' Complaints and must dismiss these cases, the Court **DENIES AS MOOT** Plaintiffs' joinder request.

### CONCLUSION

For the above reasons, the Court **GRANTS** the Government's Motion to Dismiss (ECF No. 29), **DENIES** Plaintiffs' Motion for Leave to File a Surreply (ECF No. 48), and **DENIES AS MOOT** Plaintiffs' Motion for Joinder (ECF No. 47). The Clerk is directed to enter judgment accordingly.

**SO ORDERED**.

Dated: April 25, 2023          */s/ Kathryn C. Davis*
                               KATHRYN C. DAVIS
                               Judge